UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 06-11306 RWZ

ELIZABETH BONNIE AKERLEY
Plaintiff
v.
JON CONANT,
ANGELO ZAKAS
And
BARBARA ZAKAS
Defendants

TRIAL BRIEF OF THE DEFENDANT, ANGELO ZAKAS

The plaintiff has sued Angelo Zakas alleging causes of action sounding in 1) Fraud and Deceit, 2) Unfair and Deceptive Acts and Practices (Ch. 93a), 3) Civil Conspiracy and 4) RICO Violations. The allegations arise out of a series of investments made by the plaintiff in a marble quarrying operation in Vermont. The plaintiff alleges she invested $570,000 and was defrauded losing the entire investment.

Factual Allegations Regarding Zakas

The plaintiff states that Zakas, a longtime friend introduced her to Jon Conant, a Gloucester lawyer who was well respected in the community at that time. Zakas, a real estate broker, knew Conant from past real estate transactions in which Zakas was the broker and Conant the closing attorney. Conant told Zakas that he was involved in a business venture (the Vermont Quarry) that could potentially make a lot of money but investors were needed. Conant told Zakas that if he, Zakas, knew anyone who might be interested to refer them to him. Zakas knew that Akerley had lost a lot of money (approximately one million dollars) in the stock market and was very anxious to recoup her losses. Accordingly, Zakas tells Akerley that Conant has this business deal in Vermont that could make her a lot of money and she should speak to him. Akerley meets with Conant and he shows her an appraisal of the Vermont Quarry ($130,000,000) and various purchase orders for the marble in the quarry. Conant tells Akerley that the rate of return on her investment is 100%. Conant then prepares notes and security agreements which he and the Vermont principal, John Byors, sign. Akerley makes her first investment for $50,000. The evidence will now be in dispute as to who induced the other to make further investments but Akerley and Zakas make a series of investments giving the money to Conant. Neither Akerley nor Zakas knew what was being done with the money. Zakas, over the course of one year invests approximately $85,000 along with Akerley. Parenthetically Zakas never received his money back either. It has since turned out that the Vermont defendant, John

1

Byors, orchestrated the whole scheme.  Many people lost large amounts of money.  Byors is presently serving time in Vermont for defrauding the various investors.  Between Zakas and Akerley the evidence will be clear that Akerley made each investment willingly and without any coercion from Zakas.  Akerley at all times could have refused to invest at all or invest further except for the lure of grand return on her money.  There will be no evidence that Zakas knew John Byors, was involved in any scheme or plot to defraud investors.  There will be no evidence to show that Zakas was receiving anything of value for referring Ms. Akerley to the defendant, Conant.  Lastly there will be no evidence to support a violation of 18 USCA Sec. 1341 (mail fraud) or 18USCA sec. 1943 (wire fraud) as they apply to Zakas.  Likewise there will be no evidence that Zakas knew that any representations made to Akerley in the form of documents (Blais appraisal for example) or verbal statements (by Conant to Akerley) were false when they were made or that Zakas and Conant and/or Byors acted in conspiracy with one another.

I.      Fraud and Deceit

The plaintiff must prove that a material representation of act was made by the defendant, with knowledge of its falsity, with the intent it be relied upon by the plaintiff and reliance by the plaintiff to his or her damage.  Barrett Associates, Inc. v Aronson 346 Mass 150. Kilroy v. Barron 326 Mass. 464.  The misrepresentation must be of material fact and not a statement of opinion John A. Frye Shoe Company v. Williams 312 Mass. 656.  The evidence in the instant case in the light most favorable to the plaintiff indicates that Zakas merely informed Akerley of a business opportunity or investment, the details of which Attorney Jon Conant would explain to her.  No where will the evidence show that Zakas made statements to the plaintiff that were false and that she relied upon any misrepresentation by him, to the contrary that Zakas himself invested in the Swanton Vermont quarry is ample evidence that no material misrepresentation was made by him.  The plaintiff will further be unable to prove that Akerley relied upon Zakas where the evidence will be that she relied upon Jon Conant and documents such as the appraisal and purchase orders he exhibited to her.  It is Zakas' further position that the real inducement for Akerley was the "almost too good to be true" return on the investment being offered by Mr. Byors.  There will be disputed evidence that Zakas induced Akerley to continue making further loans throughout 2003 and 2004.  This will be denied by Zakas and the evidence will show that Akerley eagerly made these loans and even insisted that Conant take one $50,000 investment even after he informed her the money was not needed.  This cast great suspicion on the theory that Zakas was putting pressure on and inducing Akerley to make investments.  Akerley will further attempt to show that Zakas had an ulterior motive, ie receiving a commission on her investments and accordingly the reason for the inducements.  The plaintiff has been unable to produce a scintilla of evidence to support this argument.

The requirement of reliance by the plaintiff can be negated where the plaintiff had ample opportunity to investigate and examine  but failed to do so.  Bennett v. Thompson  235 Mass 463 Teague v. Trulin 134 Mass 303.  See Restatement, Second, Torts sec. 552A Contributory Negligence:

> The recipient of a negligent misrepresentation is barred from recovery for pecuniary loss suffered in reliance upon it if he

      is negligent in so relying.

Likewise the reliance by the plaintiff on the alleged misrepresentation must be justifiable. <u>Restatement, Second, Torts, sec. 537.</u>

II.    <u>Unfair and Deceptive Acts and Practices</u>    (Ch. 93A)

The plaintiff alleges that the so-called illegal acts and practices of the defendant, Zakas, was a violation of M.G.L. Ch. 93A, section 11. The defendant, Zakas, alleges that section 11 (business to business violations) require the transaction giving rise to the violation was between

> "a person who engages in the conduct of any trade or commerce and who suffers any loss of money… as a result of the use or employment by another person who engages in any trade or commerce if an unfair or deceptive act or practice."

Accordingly it is quite clear that both parties must be engaged in Commerce and the unfair act must arise out of the commercial transaction between the parties. <u>Manning v. Zuckerman</u> 444N2 1262, <u>Newton v. Mottie</u> 434434Ne2 656. The defendant alleges that the transaction between Akerley and Zakas involving mutual private investments were not performed in any business context between themselves but as a private individual transactions. As such any violation (which the defendant denies) is a pure "consumer" violation governed by M.G.L. Ch. 93A Sec. 9. Section 9 requires as a condition precedent the issuance of a thirty (30) day demand letter allowing the defendant adequate time to respond by way of reasonable settlement and avoid the litigation. No thirty day demand letter was ever issued in this case and accordingly this count of the plaintiff's Complaint must fail.

III.    <u>Civil Conspiracy</u>

A Civil Conspiracy is a combination of two (2) or more persons by some concerted action seek to accomplish some criminal or unlawful purpose. <u>Antoine v. Commonwealth Trust Company</u> 266 Mass 202. A Civil Conspiracy requires on object of the course of action, one or more overt acts and damages as the proximate result thereof. Since one cannot agree, expressly or tacitly to commit a wrong about which he has no knowledge, in order for a civil conspiracy to arise, the parties must be aware of the harm or wrongful conduct at the beginning of the combination or agreement <u>Resolution Trust Co. v Heiserman</u> 898 P2 1049. It should be noted that Civil Conspiracy is an intentional tort, requiring a specific intent to accomplish the contemplated wrong, and because negligence is, by definition, not an intentional wrong the parties cannot engage in a civil conspiracy by negligent conduct (negligence cannot be a substitute for intentional) 16 AM. Jur2 sec. 50 <u>Civil Conspiracy.</u> A conspiracy may be shown by direct proof of 1) an actual agreement or understanding between the conspirators or 2) by circumstantial evidence. The circumstances however <u>must</u> do more than create a mere suspicion of the existence of conspiracy. <u>Copesy v. Swearingen</u> 36F3 1336. Therefore the Civil Conspiracy theory fails as it must in this case where there is insufficient evidence to establish an agreement to defraud Akerley between Kakas, Conant and/or Byors or any of them. In addition

some Massachusetts cases take the position that "coercion" is required as an additional element needed to be proved by the plaintiff for her to prevail. <u>Cummings v. Harrington</u> 278 Mass. 527, <u>Des Lauries v. Shea</u> 300 Mass 30.

IV.     <u>RICO</u>

  The RICO statute prohibits a person from investing, acquiring or participating in the affairs of an enterprise through a pattern of racketeering activity, 18USCA sec. 1961 et seq. Section 1961 defines racketeering activity to include any act which is indictable under various federal laws, most notably 18 USCA sec. 1343 (wire fraud) which is alleged by the plaintiff in paragraph 79 of her Complaint. The acts or offenses which constitute "racketeering activity" are often referred to as the "predicate acts" of racketeering activity. It must be shown that the defendant violated two (2) or more of the offenses listed in the definition 18USCA sec. 1961(s). In order to prove a pattern of racketeering activity, a plaintiff must show as least two (2) racketeering predicates that are related and that amount to, or thereafter the likelihood of, continued criminal activity. The Federal Courts limit the applicability of RICO if the so-called "pattern" involves no long term criminal activity. The courts have also found that "predicate acts" extending over a number of months do not satisfy this conduct. <u>Walk v. Baltimore and Ohio Railraod</u> 890 F2 688. <u>Sedima v. Imrex Co.</u> 473 U.S. 479. The defendant Zakas alleges that there will be no factual evidence or evidence from which a reasonable inference can be drawn that be violated 18USCA sec. 11343 (wire fraud) or that he was a part of or associated with any enterprise that engaged in racketeering activity. He is as much a harmed investor as is the plaintiff.

                 Angelo Zakas
                 and
                 Barbara Zakas
                 By:

                 <u>/s/ Charles Goddard</u>
                 Charles Goddard, Esq.
                 Goddard, Scuteri & Delaney
                 27 Congress Street
                 Salem, Ma. 01970
                 (978) 745-6200
                 <u>CGODDARD@GSD-LAW.COM</u>